IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON  DIVISION


JASPER HALL                                                                        PLAINTIFF

VS.                                                        CIVIL ACTION NO. 3:10cv230-FKB

CHRISTOPHER EPPS, ET AL.                                              DEFENDANTS


**<u>MEMORANDUM OPINION AND ORDER</u>**

This cause is before the Court *sua sponte* so that it may consider whether the plaintiff's allegations state a constitutional violation.  28 U.S.C. § 1915A.  In addition, before the Court are a Motion to Dismiss (Docket No. 38) filed by the United States, and a Motion for Summary Judgment (Docket No. 42), filed by Defendant Epps. The Court held an omnibus hearing in this matter, at which time it conferred with the plaintiff and counsel for the defendants in this suit founded upon 42 U.S.C. § 1983. At that hearing, the parties consented to have a United States Magistrate Judge conduct any and all further proceedings in the case and order the entry of final judgment, and the District Judge subsequently entered an order of reference.[1]  28 U.S.C. § 636(c), Fed. R. Civ. P. 73.  Plaintiff Hall is proceeding in this matter *pro se* and  *in forma pauperis*. 28 U.S.C. § 1915(e).

Plaintiff's claims arise from alleged inadequate medical care he received following an injury to his finger on November 5, 2008.  At the time of his injury and subsequent medical care,

---

[1] United States Magistrate Judge Linda Anderson conducted the Omnibus Hearing. Subsequent to the hearing, Magistrate Judge Anderson entered an Order of Recusal (Docket No. 45).  Thereafter, Chief United States District Judge Henry T. Wingate referred the matter to the undersigned pursuant to 28 U.S.C. § 636 (c) and Rule 73 of the Federal Rules of Civil Procedure.

Plaintiff, who is incarcerated, was housed at the Holmes County Correctional Facility (the "Holmes Facility") in Lexington, Mississippi, and the Central Mississippi Correctional Facility ("CMCF") in Pearl, Mississippi.   The defendants in this matter are Christopher Epps, Commissioner of the Mississippi Department of Corrections; the United States[2]; and Sheriff Willie March and Nurse Boyd of the Holmes Facility.  Named as defendants, but unserved, are the Medical Administrator for Holmes Facility, and Ron King, superintendent of CMCF at the time of the alleged events.

## I.  FACTS

At the omnibus hearing, Plaintiff was given an opportunity to clarify his claims and develop the facts leading to this lawsuit.  The essence of his section 1983 claim is that the defendants violated his Eighth Amendment rights when they provided inadequate medical care for his injured finger.  More specifically, in his testimony and in his complaint, plaintiff alleges that the defendants were deliberately indifferent to his serious medical needs after his finger was accidentally injured on November 5, 2008, while he was performing repair work on a truck at the Holmes Facility.  After the accident, the plaintiff was immediately taken to the nurses' station/medical clinic at the Holmes Facility.  Plaintiff is aggrieved that, upon arrival at the nurses' station/medical clinic,  he had to wait, by his estimation, six minutes before Nurse Boyd could examine his finger.  He is also aggrieved that, rather than Nurse Boyd washing his finger,

---

[2] Plaintiff originally sued Reginald D. Rigsby, M.D., who provided the initial medical care to Hall at the Mallory Community Health Center, Inc.  Pursuant to 42 U.S.C. § 233(g), the Secretary of Health and Human Services determined that Rigsby is an employee of the Public Health Service for purposes of the Federal Tort Claims Act only. *See* Docket No. 35-1 at 1. Accordingly, the Court entered an Order substituting the United States as the proper party in place of Rigsby. Order, Docket No. 37.

she instructed him to wash it so that she could examine it, and that she failed to give him pain medication, even though he did not ask for it.

According to the Plaintiff, on that same day he was transported by Holmes Facility personnel for further treatment to the Mallory Community Health Center, Inc. ("Mallory Clinic"). Upon his arrival at the Mallory Clinic, he was treated by Dr. Reginald D. Rigsby. Dr. Rigsby administered ten stitches and applied a pressure bandage to Hall's finger. During this initial visit, Plaintiff relates that the doctor told him that he would have a follow-up visit the next week. Plaintiff alleges that Dr. Rigsby's care was inadequate because he failed to prescribe any pain medication, he failed to give instructions to the nurses regarding the care of the finger, and he failed to instruct Hall to change the bandage.

On Thursday, November 6, Hall's finger began swelling. Plaintiff asserts that the finger continued to swell and hurt so that on Friday, November 7, he could not sleep because of the pain. Docket No. 1 at 13. Plaintiff alleges that Boyd failed to call him to the nurse's station on either November 6 or 7 to check on his finger. On Saturday, November 8, Hall reported the pain and swelling to an officer, who required Hall to fill out a sick call form. On that day, the weekend nurse examined his finger and cut the bandages, thereby revealing that his finger emitted a foul odor and that the stitches had burst. The weekend nurse cleaned his finger with peroxide solution, applied antibiotic ointment to it, and wrapped it again. The next day, the same weekend nurse called Hall to the nurse's station to check his blood pressure and his finger's condition. He alleges that throughout this time he was in pain and the defendants failed to give him pain medications.

During the next few days, Nurse Boyd never called to check on the finger, and he

continued to experience pain in his finger.  On Thursday, November 13, Nurse Boyd called Hall

to the nurse's station and informed him he should have changed his bandages.  After examining

the finger, which emitted a bad odor,  Nurse Boyd immediately arranged for him to be sent to the

Mallory Clinic.  On that same day, Dr. Scazo with the Mallory Clinic examined Hall, informed

him that the finger was badly infected, removed the stitches, and told Hall that he would

prescribe for him twice the normal amount of antibiotics.  While at the Mallory Clinic, medical

personnel administered antibiotic injections to him, prescribed him oral antibiotics and a cream

to apply to his finger, and instructed him to soak his finger twice a day in Epsom salt water.

Upon his return to the Holmes Facility, Nurse Boyd instructed Plaintiff to change the

bandages, gave him supplies to accomplish this, and administered his oral antibiotics.[3]  Hall

avers that he was unable to change his bandages with the use of only one hand, so other inmates

helped him by changing his bandages for him.  Four days later, on approximately November 17,

he saw Dr. Rigsby, at which time Dr. Rigsby immediately sent Hall to the clinic at CMCF for

further medical care.

At CMCF, Hall was examined by a Dr. Webb.  Hall relates that Dr. Webb said he did not

know if Hall was going to lose his finger because it had turned black from the nail beyond the

second joint.  Hall alleges that Dr. Webb immediately started intravenous antibiotics, which

continued until November 26, at which time he was transported to the University of Mississippi

Medical Center ("UMMC") for surgery.  According to his complaint, on November 27 he

underwent surgery, at which time a doctor removed the dead tissue on his finger and gave him

---

[3] Plaintiff does not allege claims related to the method in which the oral antibiotics were
administered.

morphine for pain.

Immediately after surgery, he was transported to CMCF for recovery.  He remained in the clinic at CMCF until December 4, when he was moved to the general population.  While he was in the clinic, nurses changed his bandages twice a day, and he remained on intravenous antibiotics until November 30.  According to his complaint, his bandages were changed by nurses twice a day until January 10, 2009, at which time the nurses began changing his bandages once per day, although he alleges that there were times the guards would not let him go to the clinic.

According to his complaint, it appears that he continued to fight the infection until April 2009.  During that time period, plaintiff relates that he remained at CMCF while doctors monitored and treated his finger.  As stated in his complaint, he underwent several courses of oral antibiotics and one course of intravenous antibiotics.  Hall further alleges that nurses changed his bandages consistent with doctor's orders, except on occasions when the guards refused to let him visit the clinic. He alleges that he took his last medication on April 21, 2009, and he has not seen anyone about his finger since that time.  Docket No. 1 at 19.  He was transferred to the Mississippi State Penitentiary at Parchman on May 21, 2009.

As a result of his injuries and the resulting treatment, the plaintiff alleges that he cannot bend his finger, cannot hold anything, and is in constant pain.  As for relief, the complaint seeks corrective measures for the disfigured finger and rehabilitative services, appointment of counsel,[4] a jury, punitive damages, and compensatory damages of $350,000.

During the omnibus hearing, the Court asked the Plaintiff to explain the basis of his

---

[4] The Court addressed appointment of counsel at the omnibus hearing and informed Hall that counsel was only given in a 1983 action in extraordinary cases.  This is not an extraordinary case.

claims against each defendant. The plaintiff testified that he brought claims against defendant Epps because Epps is analogous to being an owner, even though Epps had no direct involvement in his care or treatment.  Plaintiff testified that he brought claims against Sheriff March because he is over Nurse Boyd, but he acknowledged that March had no direct involvement in his care or treatment except to authorize the Mallory Clinic visits.  As to Ron King, Plaintiff alleged he brought his claims against CMCF Administrator King because he is responsible for nurses and doctors at CMCF.  Hall also argues that King was ultimately responsible when, after surgery,  his bandages were not changed twice a day.   As to the unnamed medical administrator for Holmes County Correctional Facility, Plaintiff alleges through "the linking process" that he is responsible for Nurse Boyd's reckless disregard for his finger that needed immediate attention, and for the six minute delay in treatment on the day of his initial injury.  In general,  the complaint alleges "medical malpractice," "unnecessary delay," and "denial of access to doctor at times of need."

Prior to the omnibus hearing, the United States (on behalf of its employee, Dr. Rigsby), filed a motion to dismiss the case for lack of jurisdiction pursuant to 28 U.S.C. § 2675 of the Federal Tort Claims Act ("FTCA") because the plaintiff had failed to exhaust administrative remedies.  The United States renewed its motion at the omnibus hearing, and the plaintiff admitted at the hearing that he had not exhausted administrative remedies through the FTCA appeals process.  In addition, during the omnibus hearing, counsel for Defendant Epps moved for dismissal based upon the theory of *respondeat superior*.  Epps subsequently filed a motion for summary judgment on that basis.

## II.  Motion to Dismiss

As stated above, the United States filed a Motion to Dismiss (Docket No. 38) based upon

the plaintiff's failure to exhaust administrative remedies through the FTCA.  Exhaustion of the

administrative remedy found in 28 U.S.C. § 2675(a) is a jurisdictional prerequisite to suit, even

for incarcerated prisoners.  *See McNeil v. U.S.*, 508 U.S. 106 (1993).  Plaintiff admits that he

failed to exhaust his administrative remedies on his alleged FTCA claim.  Accordingly, the

government's motion to dismiss is granted on this basis.

### III.  Motion for Summary Judgment

Defendant Epps has filed a Motion for Summary Judgment arguing that he is entitled to

dismissal because plaintiff has sued him based upon the theory of *respondeat superior*.  Rule 56

of the Federal Rules of Civil Procedure states, in relevant part, that summary judgment "shall be

rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An

issue of fact is genuine if the "'evidence is sufficient to permit a reasonable factfinder to return a

verdict for the nonmoving party.'"  *Lemoine v. New Horizons Ranch and Center*, 1999 WL

246713, *3 (5th Cir. 1999)(quoting *Colston v. Barnhart*, 146 F.3d 282 (5th Cir.), *cert. denied*,

119 S.Ct. 618 (1998)).  Issues of fact are material if "the resolution of the issues affect the

outcome of the suit under governing law."  Id.  "Federal summary judgment procedure requires

the court to 'pierce through the pleadings and their adroit craftsmanship to reach the substance of

the claim.'"  *Hicks v. Brysch*, 989 F.Supp. 797, 806 (W.D. Tex. 1997)(citing *Tacon Mech.

Contractors v. Aetna Cas. and Sur. Co.*, 65 F.3d 486, 488 (5th Cir. 1995)).  The Court does not,

"however, in the absence of any proof, assume the nonmoving [or opposing] party could or

would prove the necessary facts."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.

1994)(en banc)(emphasis omitted).  Moreover, the non-moving party's burden to come forward

with "specific facts showing that there is a genuine issue for trial," *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986), is not satisfied by "conclusory allegations" or by "unsubstantiated

assertions," or by only a "scintilla" of evidence.  *Little*, 37 F.3d at 1075.

Epps asserts that he is entitled to summary judgment because the Plaintiff has named him

as a defendant simply because he is the Commissioner of the MDOC.  Indeed, the plaintiff

admitted at the omnibus hearing that he has sued Epps because Epps is analogous to being an

owner, even though Epps had no direct involvement in his care or treatment.  Plaintiff has failed

to allege Epps's direct involvement in the alleged deprivations on which this action is based.

*Jolly v. Klein*, 923 F.Supp. 931, 943 (S.D. Tex. 1996)( "the plaintiff must allege facts reflecting

the defendants' participation in the alleged wrong, specifying the personal involvement of each

defendant." ).  Supervisory officials, moreover, "cannot be held liable for the actions of

subordinates under any theory of vicarious liability."  *Id.*

Furthermore, Hall has not argued that Epps failed to supervise properly the officials,

doctors, and nurses under his direction, and he has failed to provide any evidence in support of

such a claim. *See Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001) (explaining

that supervisory liability under § 1983 requires proof that the supervisor failed to supervise the

officer involved; that a causal connection between the alleged failure to supervise and the

constitutional violation is required; and that the failure to supervise must constitute deliberate

indifference to the plaintiff's constitutional rights). Accordingly, Epps is entitled to summary

judgment on the Plaintiff's claims against him.

<u>IV.  Supervisory Liability as to Defendants March, King,</u>

<u>and the HCCF Medical Administrator</u>

Plaintiff has alleged that Defendants March, King, and the HCCF Medical Administrator violated his constitutional rights with regard to his medical treatment.  During the omnibus hearing, the Court explored the basis of the Plaintiff's claims against the defendants March (Holmes County Sheriff), King (CMCF administrator), and the HCCF Medical Administrator. In essence, the plaintiff admitted that he had named each of these persons as defendants because they headed the organizations that allegedly failed to provide him adequate medical care.  As to March, the plaintiff admitted that he never directly talked to March about his finger, but Hall argues that March should have known the capabilities of Nurse Boyd who worked under him. Hall asserts that King should be held responsible for the violation of his rights because he is responsible for the doctors and nurses at CMCF, who failed to change his bandages consistent with doctor's orders.  Finally, as to the HCCF Medical Administrator, plaintiff explained at the omnibus hearing that he had sued that person because Nurse Boyd worked for him.

In an action pursuant to § 1983, "a government official can be held liable only for his own misconduct." *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011).  "[A] supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Wernecke v. Garcia,* 591 F.3d 386, 401 (5th Cir. 2009).  In this case, there is no evidence that the defendants in supervisory positions established a policy causing Hall's alleged deprivation of care.  Additionally, the plaintiff admitted that Defendants March, King, and the HCCF Medical Administrator did not affirmatively participate in the circumstances

surrounding the care of his injured finger.

In addition, Hall has not alleged facts of an actual failure to train or supervise.  More than one instance of lack of training or supervision is usually required for a deliberate indifference cause of action.  *Mesa v. Prejean,* 543 F.3d 264, 274 (5th Cir. 2008).  Thus, plaintiff has failed to allege sufficient facts for a cause of action based on supervisory liability as to Defendants March, King, and the HCCF Medical Administrator.   Accordingly, the claims against these defendants should be dismissed with prejudice for failure to state a claim on which relief may be granted.

V.  Deliberate Indifference to Medical Care Claims against Nurse Boyd

Plaintiff alleges that Nurse Boyd violated his constitutional rights when she failed to provide adequate medical care to his injured finger.  In particular, he alleges that she violated his constitutional rights when she delayed treating him for six minutes when he first arrived at the nurses' station/medical clinic immediately after his accident, that she failed to give him pain medications, and that she failed to dress his finger properly or otherwise provide care for him.

Having reviewed the claims against Nurse Boyd and having considered the plaintiff's testimony at the omnibus hearing, the Court finds that these claims should be dismissed. "[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under 1983," "whether the indifference is manifested by prison doctors . . . or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).  In order for Hall to prevail on a §1983 claim for deliberate indifference, he must demonstrate that the defendant, who personally participated in the incidents, made an intentional, more than negligent, "conscious choice to endanger constitutional rights."  *Mesa*, 543 F.3d at 274 (internal quotation marks

omitted); *Snyder v. Trepagnier*, 142 F.3d 791, 799 (5th Cir.1998).  Deliberate indifference is "a state of mind more blameworthy than negligence" and is the "reckless disregard for a substantial risk."  *Wernecke v. Garcia,* 591 F.3d 386, 401 (5th Cir. 2009); *Farmer v. Brennan*, 511 U.S. 825, 835-36 (1994).  "The test for deliberate indifference is subjective."  *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 255 (5th Cir. 2005).  "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" is not "the infliction of punishment."  *Farmer*, 511 U.S. at 838.

Where a prisoner was treated seventeen times in three months, the United States Supreme Court held the plaintiff failed to state a cause of action as to medical personnel for deliberate indifference constituting an Eighth Amendment violation.  *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976).  Not every claim that a prisoner has received inadequate medical treatment states an Eighth Amendment violation.  *Id.* at 105.

Plaintiff in the instant case has several medical records that show he was seen and treated numerous times with various bandages, different types and deliveries of antibiotics, and even surgery.  Even his complaint and testimony demonstrate a pattern and plan for care established by the medical personnel.  Although his finger became infected, the efforts by medical personnel, including Nurse Boyd, saved his finger from amputation and ensured that it healed.  "Unsuccessful medical treatment does not give rise to a § 1983 cause of action" and neither does "[m]ere negligence, neglect[,] or medical malpractice."  *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).

An overview of plaintiff's medical care, as set forth in his complaint and by his testimony at the omnibus hearing, shows that Nurse Boyd and other medical personnel were not

-11-

deliberately indifferent to his serious medical needs.

     1. He was treated by Dr. Rigsby and a nurse on November 5 with stitches and bandage.

     2. He was treated by a Nurse three days later with peroxide solution and antibiotic ointment, and he was also seen the next day.

     3. He was treated four days later by Dr. Scazo with antibiotic injections.

     4. He was seen four days later by Dr. Rigsby and immediately sent to CMCF.

     5. At CMCF he saw Dr. Webb, who administered intravenous antibiotics.

     6. On November 27 was taken to UMMC for surgery the same day.

     7. He remained in the clinic at CMCF until December 4, when he was moved to the general population.

     8. His bandages were changed twice daily by nurses until January 10, 2009, when the nurses began changing them once per day.

     9. He underwent several courses of antibiotics until April 21, 2009, and he was transferred to Parchman in May, 2009.

     This time line does not demonstrate denial of access to a doctor or unnecessary delay. Any time that Plaintiff filled out a sick call form he saw medical personnel and was treated by multiple doctors and nurses. Each time his injury elevated in seriousness, he was immediately transferred to a place of treatment, to the point where he even underwent surgery on Thanksgiving Day within hours of his arrival at UMMC.  Not long after the surgery, Hall was given several different high-level antibiotics, and his bandages were changed twice a day.  It appears that gradually the bandages were not changed as often because Hall's healing progressed and was eventually completed.  The Court is mindful that "a disagreement between an inmate

-12-

and his physician concerning whether certain medical care was appropriate is actionable under §

1983 only if there were exceptional circumstances." Banuelos v. McFarland, 41 F.3d 232, 235

(5th Cir. 1995). Although the plaintiff's accident and resulting injuries were arguably serious,

this case does not appear to present exceptional circumstances.  Indeed, the plaintiff's own

account of his varied and long treatment belies his claims.  See Banuelos v. McFarland, 41 F.3d

at 235 ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an

inmate's allegations of deliberate indifference.").

       Moreover, Plaintiff's specific claims against Nurse Boyd fail when measured against this

standard.  Although Plaintiff alleged that Nurse Boyd, the first nurse who saw him, was

deliberately indifferent to his care when she took six minutes to check on his finger from the time

he walked into the Clinic, this simply is not deliberate indifference, nor delay in giving medical

attention.  "An accident, [like Hall's now disfigured finger after having multiple doctors,

multiple treatments, and surgery,] although it may produce anguish is not on that basis alone to

be characterized as wanton infliction of unnecessary pain." *Estelle*, 429 U.S. at 105.  When

Boyd first discovered the infection, she ensured that he was immediately transported to the

Mallory Clinic for treatment.  Upon his return from treatment, she administered antibiotics and

gave him a supply of bandages to change the dressings. Although he may disagree with the

treatment he has received, "an inmate's mere disagreement with the course of medical treatment

does not give rise to a constitutional claim." Martinez v. Turner, 977 F.2d 421, 423 (8th Cir.

1992).

       Judges have "the authority to dismiss a claim based on an indisputably meritless legal

theory" and have the "power to pierce the veil of the complaint's factual allegations and dismiss

those claims whose factual contentions are clearly baseless." *Neitzke v. Williams,* 490 U.S. 319, 327 (1989). Hall has not alleged enough facts to support his claim of deliberate indifference to serious medical needs or unnecessary delay. "A dismissal is proper if . . . the claim has no arguable basis in law and fact." *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (internal citation and quotation marks omitted). Accordingly, because the Plaintiff has not sufficiently alleged facts supporting a §1983 claim of deliberate indifference to medical care or unnecessary delay, the Plaintiff's claim against defendant Boyd should be dismissed with prejudice for failure to state a claim.

## VI. CONCLUSION

For the reasons stated in this Memorandum Opinion and Order, the Court finds that the Motion to Dismiss filed by the United States should be granted, and that Defendant Epps's Motion for Summary Judgment should be granted. In addition, Plaintiff's claims against Defendants March, King, and the Medical Administrator of the Holmes Facility should be dismissed for failure to state a claim. Finally, Plaintiff's claims of deliberate indifference to medical care and denial of pain medication, and other allegations of medical negligence against Nurse Boyd fail to arise to the level of a constitutional violation. Accordingly, Plaintiff's claims against the United States should be dismissed without prejudice. Plaintiff's claims against the remaining defendants should be dismissed with prejudice. A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED, this the 26th day of September, 2011.

/s/  F. Keith Ball
UNITED STATES MAGISTRATE JUDGE